**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                       :
OUSMAN D.,                             :
                                       :        Civil Action No. 20-2292 (JMV)
                    Petitioner,        :
                                       :
         v.                            :        **OPINION**
                                       :
THOMAS DECKER, et al.,                 :
                                       :
                    Respondents.       :
_____:

**VAZQUEZ, District Judge:**

   This matter originated with Petitioner Ousman D.'s[1] ("Petitioner") Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2241 and amended petition.   D.E. 1, 33.   Also before the

Court is Petitioner's motion for immediate release.   D.E. 36.   Petitioner's requests relief based on

the current COVID-19 pandemic, personal circumstances, and immigration law.   For the reasons

detailed below, the Court denies the petition for writ of habeas corpus and the motion for

immediate release.

---

1 Petitioner is identified herein only by his first name and the first initials of his surname in order
to address certain privacy concerns associated with § 2241 immigration cases.   This manner of
identification comports with recommendations made by the Judicial Conference of the United
States' Committee on Court Administration and Case Management.

## I.       Background

Petitioner is an immigration detainee being held by U.S. Immigration and Customs Enforcement ("ICE") at the Bergen County Correctional Facility ("Bergen County Jail") in Hackensack, New Jersey.  Petitioner is a native and citizen of Gambia who entered the United States on September 2, 2001, as a nonimmigrant with authorization to remain the United States for a temporary period not to exceed March 1, 2002.  D.E. 45-2 at 3.  On February 16, 2011, Petitioner was served with a notice to appear charging him as a nonimmigrant who overstayed his visa sunder Section 237(a)(1)(B) of the Immigration and Nationality Act.  *Id.*  His immigration proceedings were administratively closed on December 17, 2015, due to his incarceration for a state criminal offense.  *Id.*  Petitioner has been arrested and charged with criminal offenses at least eight times, the most recent of which resulted in a guilty plea to robbery in the third degree in violation of New York state law.  D.E. 45-3 at 2.  Petitioner was sentenced to 364-days incarceration for the robbery conviction.  *Id.*  The most recent conviction was recently pardoned by New York Governor Andrew Cuomo.

On May 20, 2019, an immigration judge ("IJ") ordered Petitioner removed from the United States.  D.E. 45-7 at 2.  On or about November 14, 2019, the Board of Immigration Appeals ("BIA"), dismissed his appeal of the IJ's decision.  D.E. 45-5 at 2-5.  Petitioner's order of removal became administratively final, and the authority for his detention switched to mandatory detention under 8 U.S.C. § 1231(a)(2).  *Id.*  On November 26, 2019, Petitioner filed a notice of appeal of the BIA's decision in the United States Court of Appeals for the Second Circuit.  On December 4, 2019, Petitioner filed a motion for stay of removal in the Second Circuit, which the United States opposed on December 16, 2019.  The motion remains unadjudicated.  In February of 2020, Petitioner received an unconditional pardon from New York Governor Andrew Cuomo

for his 2017 robbery conviction.   D.E. 36 at 1, D.E. 33-15 at 16.   Petitioner has since filed a motion to reopen before the BIA based on the pardon.   *Id.*   On March 16, 2020, Petitioner's motion to hold his appeal in the Second Circuit in abeyance pending the outcome of his motion to reopen before the BIA, was granted.   Petitioner remains detained pursuant to 8 U.S.C. § 1231(a)(2) for almost five months now.

On December 12, 2019, Petitioner filed a petition for writ of habeas corpus challenging his immigration detention pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of New York.   D.E. 1.   Respondent filed a motion to dismiss or in the alternative to transfer the case to the District of New Jersey because Petitioner was detained in the Bergen County Jail in New Jersey.   D.E. 14.   On March 2, 2020, District Judge Edgardo Ramos of the Southern District of New York granted Respondent's motion to transfer and this matter was transferred to this Court.   D.E. 27.   On March 18, 2020, Petitioner filed an amended petition, D.E. 33, and on March 20, 2020, Petitioner filed a motion for immediate release in the wake of the ongoing COVID-19 pandemic,[2] that has been reported to have been contracted by both Bergen County Jail personnel and inmates.[3]   D.E. 36.   In addition to his immediate release, Petitioner asks the Court to alternatively convene a bond hearing or to order Respondents to grant him a bond

---

[2] COVID-19 is an abbreviation of the coronavirus disease 2019, a respiratory illness that can spread from person to person, that was declared a pandemic by the World Health Organization ("W.H.O.") on March 11, 2020.   *See* Centers for Disease Control and Prevention *Coronavirus Disease 2019 Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#covid19-basics (last visited Apr. 7, 2020); *see also* William Wan, *WHO declares a pandemic of coronavirus disease covid-19*, Washington Post, https://www.washingtonpost.com/health/2020/03/11/who-declares-pandemic-coronavirus-disease-covid-19/ (last visited April 7, 2020).

[3] Monsy Alvarado, *Second ICE detainee in New Jersey tests positive for coronavirus*, Northjersey.com, https://www.northjersey.com/story/news/new-jersey/2020/03/26/coronavirus-nj-second-ice-detainee-tests-positive-covid-19/2916525001/ (last visited April 8, 2020).

hearing.   Petitioner also requests reasonable costs and attorney fees pursuant to the Equal Access to Justice Act "EAJA."   On April 7, 2020, this Court convened a telephonic hearing with the parties to hear arguments pertaining to Petitioner's motion for immediate release.   D.E. 53.

Petitioner is approximately twenty-six years old and does not report any underlying health conditions.   He submits, *inter alia*, that he is at heightened risk of contracting the virus because of his duties as "houseman" at the jail.   D.E. 36 at 6.   The role of a houseman is to serve food to other detainees in his unit and to clean the common areas.   D.E. 46 at 2.   Petitioner indicates that a recently released detainee who tested positive for COVID-19 also had duties in the jail kitchen and was subsequently treated by medical professionals who were not wearing masks.   *Id.* Petitioner also submits that his detention is taking a significant toll on his wife and young child, even more so now that visitors are prohibited form Bergen County Jail in its efforts to combat COVID-19.   D.E. 36 at 7.   Finally, Petitioner indicates that his recent gubernatorial pardon presents a new circumstance that was not properly considered when ICE decided to continue his detention.   *Id.* at 8.

Respondents do not contest Petitioner's duties as houseman, nor that he continues to maintain his duties while the facility is on "lockdown."   Instead, Respondents argue, *inter alia*, that that the likelihood of success on Petitioner's underlying section 2241 habeas petition is low and that his basis for requesting emergent relief- the COVID-19 pandemic, his desire to reunite with his family and the pardoning of his robbery conviction does not constitute the extraordinary circumstances that would necessitate his immediate release.   D.E. 48 at 24.   Respondents also indicated that Petitioner's role as houseman are voluntary and that he can relinquish the position if he so chooses.

**A. COVID-19**

COVID-19 is a type of highly contagious novel coronavirus that is thought to be "spreading easily and sustainably between people." *How Coronavirus Spreads*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html ("*How Coronavirus Spreads*") (last visited April 8, 2020).   The National Institutes of Health reports that the virus "is stable for several hours to days in aerosols and on surfaces[.]"[4]   COVID-19 is "spread mainly from person-to-person."   *Id.*   This person-to-person spread can occur (1) between persons who are in close contact, meaning within six feet, and (2) by respiratory droplets when an infected person sneezes, coughs, or talks.   *Id.*   The virus can also be spread by infected persons who are not showing symptoms.   *Id.*

New Jersey has been particularly hard hit, with the northern part of the state bearing the initial brunt.   As of April 13, 2020, New Jersey had 61,850 cases and 2,350 deaths.   *COVID-19 Information Hub*, STATE OF NEW JERSEY, https://covid19.nj.gov/ (last visited April 13, 2020). The total number of cases and deaths for Bergen County, Hudson County, and Essex County, respectively, were 9,784/453; 7,469/226; and 7,410/428.   *Id.*   New Jersey has taken numerous steps, such as the Governor's stay-at-home order on March 21, 2020, to combat the virus.   In addition, New Jersey has closed schools indefinitely and closed beaches, state parks, and county parks.[5]

---

4 *New Coronavirus Stable for Hours on Surfaces*, NATIONAL INSTITUTE OF HEALTH, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces   (last visited April 8, 2020)

5 *New Jersey closes state parks, state forests and county parks as more than 200 new COVID-19 deaths reported*, 6abc, https://6abc.com/covid19-cases-us-coronavirus-symptoms/6083512/ (last visited April 7, 2020).

**B.  Bergen County Jail**

In response to the pandemic, ICE has taken affirmative steps to lessen the risk of exposure. *ICE Guidance on COVID-19*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/coronavirus (last visited on April 8, 2020).   For example, ICE temporarily suspended all social visitation at detention facilities.   *Id.*   ICE also released approximately 160 individuals who were over the age of 60 or pregnant.   *Id.*   ICE further instituted screening guidance for new detainees and indicates that it is testing detainees for COVID-19 as per CDC guidance.   *Id.*

Respondents submitted a declaration from Steven Ahrendt, the warden of the Bergen County Jail.   D.E. 49-1.   As of the date of Ahrendt's declaration, April 1, 2020, two ICE detainees had tested positive for COVID-19, one of which was released on March 26, 2020; one county inmate tested positive; and four members of the correctional staff had tested positive and were not working at the facility.   *Id.* at 6.   Ahrendt details the efforts of Bergen County Jail to deal with the virus.   He reports that Bergen County Jail has suspended all immigration detainee intake while all county inmate intake requires that the inmate undergoes medical screening including fever and respiratory assessment.   *Id.* at 3.   Furthermore, personnel and vendors are also required to undergo medical screening prior to entering the facility.   Social visitation is suspended, and attorney visits are limited to visits where the attorney and client are separated by a glass partition or alternatively, they can conference by telephone.   *Id.*   He states that the facility is on "lockdown," detainees and inmates are permitted to exit their cell area, four individuals at a time, for thirty minutes each day.   *Id.*   This measure allows for significantly more physical space than usual to facilitate social distancing while inmates are in the recreation area or showering.   *Id.* at 3-4.   Health care at the facility is administered by an on-site physician (who is available

6

twenty-four hours), as well as twelve full-time RNs and four full-time LPNs.   *Id.* at 2.
Additionally, Bergen County Jail's medical personnel includes three part-time psychiatrists, and
one full-time and one part-time dentist.   *Id.*   Due to COVID-19, the facility has additional
medical staff that are on site 24 hours a day and an on-site infirmary.   *Id.*

  Among other measures instituted in response to COVID-19, Bergen County Jail educates
detainees as to the "importance of hand washing and hand hygiene" and provides detainees daily
access to sick call.   *Id.* at 4.   The facility's education on proper hygiene includes signs posted in
English and Spanish.   *Id.*   Fresh air is circulated by opening windows and utilizing vents.   *Id.*
If a detainee complains of COVID-19 symptoms, he is immediately evaluated and if that person
exhibits COVID-19 symptoms, he or she is provided a surgical mask.   *Id.*   Symptomatic
detainees are immediately taken to either Hackensack Medical Center or Newbridge Medical
Center.   *Id.*   Those who test positive, but who do not require hospitalization, are quarantined in
their own cell in a unit that is exclusively being used for inmates/detainees with positive COVID-
19 results.   *Id.*   Detainees who have had a known exposure to COVID-19 but who are
asymptomatic are "cohorted," meaning that they are placed with other similar individuals for
fourteen days.   *Id.*   Ahrendt also reports that Bergen County Jail has increased its cleaning staff
in order to ensure the facility is cleaned no less than four times per day.   *Id.* at 4.

  Petitioner submits that the Bergen County Jail's measures are insufficient to prevent or
control the virus.   He represents, among other things, that two detainees are confined to cells that
measure 10' x 7' for 23.5 hours a day.   D.E. 50 at 2.   Moreover, Petitioner provides that the jail
did not promptly notify its detainees of the first two confirmed COVID-19 cases in the jail.   D.E.
46-1 at 2.   Petitioner represents that in order to perform his duties as houseman, he now, uses
ripped up t-shirts and watered-down soap to clean surfaces, as the jail is not providing cleaning

7

rags or disposable towels.   *Id.* at 3-4.   Nor is he provided with protective equipment to wear while performing his duties as houseman.   *Id.* at 2-3.   Petitioner also claims to have knowledge of another detainee in his housing unit whose pleas for medical assistance were denied until other detainees in the housing unit "made enough noise to draw attention to this man's condition."[6]   *Id.* at 3.

## II.   LEGAL STANDARD

In addition to his habeas petition under 28 U.S.C. § 2241, Petitioner has filed a motion for immediate release, D.E. 36, pursuant to *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), which the Court construes as a request for a preliminary injunction.   Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65 and Local Civil Rule 65.1.   Injunctive relief may only be granted when a party demonstrates that he has a reasonable probability of success on the merits, he will suffer immediate and irreparable harm if the injunction does not issue, the grant of preliminary relief will not result in greater harm to the nonmoving party, and the injunctive relief is in the public interest.   *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012) (citing *Crissman v. Dower Down Entm't Inc.*, 239 F. 3d 357, 364 (3d Cir. 2001)).

> [W]e follow our precedent that a movant for preliminary equitable relief must meet the threshold for the first two "most critical" factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

---

6 The record is not clear whether Petitioner personally observed this incident.

8

*Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

Like injunctive relief in general, granting bail to a habeas petitioner is an extraordinary remedy.  *See Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (indicating that a court may only grant release pending a disposition of federal habeas claims when the petitioner has raised "substantial constitutional claims upon which he has a high probability of success, and ... when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective") (citation omitted); *see also In re Souels*, 688 F. App'x 134, 135-36 (3d Cir. 2017).

## III.    DISCUSSION

The Court finds that Petitioner has not established a reasonable likelihood of success on the merits and is not entitled to preliminary injunctive relief.

First, the Court will address Respondents' claim that Petitioner lacks standing.  D.E. 48 at 25-27.  Respondents argue that Petitioner does not allege that he lives with any co-morbidities, has been exposed to anyone with COVID-19 or that he has contracted COVID-19 and therefore has not established the injury in fact necessary to have standing.  *Id.* at 27.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  Standing to sue is a "[c]omponent of the case-or-controversy" requirement.  *Id.*  Thus, a court must dismiss a case for lack of subject matter jurisdiction if a plaintiff lacks Article III standing.  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016).  To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'"  *Id.* at 193 (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d

9

Cir. 2015) (internal quotation marks omitted and punctuation modified)).   The first element, an injury-in-fact, requires that a plaintiff show " 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.' " *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 278 (3d Cir. 2014)).   Moreover, a plaintiff "must clearly and specifically set forth facts sufficient to satisfy . . .standing" as "a federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."   *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

The Court finds that Petitioner has standing in light of his request for emergent relief in the wake of a national health crisis.   *See Thakker v. Doll*, Civ. Action No. 1:20-480, --- F. Supp. 3d---, 2020 WL 1671563, *2 (M.D. Pa. Mar. 31, 2020) ("Since '[a] remedy for unsafe conditions need not await a tragic event,' it is evident that Petitioner[] ha[s] standing in this matter.") (quoting *Helling v. McKinley*, 509 U.S. 25, 33 (1993)).   In *Helling*, a prisoner alleged that his Eighth Amendment rights had been violated because he had been exposed to environmental tobacco smoke in prison.   *Id.* at 28.   The Supreme Court ruled as follows:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement *that is sure or very likely to cause serious illness and needless suffering the next week or month or year.*   In *Hutto v. Finney,* 437 U.S. 678, 682, we noted that inmates in punitive isolation were crowded into cells and that some of them *had infectious maladies* such as hepatitis and venereal disease.   This was one of the prison conditions for which the Eighth Amendment required a remedy, *even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed*.   We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.   *Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.*

That the Eighth Amendment *protects against future harm* to inmates is not a novel proposition.   The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." *DeShaney*[ *v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 200 (1989)].   It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions."   *Youngberg v. Romeo,* 457 U.S. 307, 315–316 (1982). *It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.   The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event*.   Two of them were cited with approval in *Rhodes v. Chapman,* 452 U.S. 337, 352, n. 17 (1981). *Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974), held that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and *the mingling of inmates with serious contagious diseases with other prison inmates*.   *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980), stated that a prisoner need not wait until he is actually assaulted before obtaining relief. . . .  We thus reject petitioners' central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment.

*Id.* at 33-34 (emphases added).   Although decided in the context of an Eighth Amendment claim, the quoted language applies with equal force here.   Petitioner does not need to actually show that he has COVID-19 to establish standing.

### A.  The Merits of Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241

In order to meet the first prong, the party seeking the injunction "must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not.)"   *Reilly*, 858 F.3d at 179.   Under 28 U.S.C. § 2241(c), habeas relief "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in

custody," and (2) the custody is alleged to be "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c) (3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).   The Court has subject matter jurisdiction over this matter under § 2241 because, at the time he filed his petition, Petitioner was detained within its jurisdiction by a custodian within its jurisdiction.   *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) and *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-95, 500 (1973).

In Petitioner's section 2241 petition, he raises six claims surrounding the legality of his detention.   D.E. 33 at 25-44.   He first argues that his prolonged immigration detention without an adequate bond hearing violates his constitutional rights.   D.E. 25-31.   In his second claim, he argues that his detention when removal is not foreseeable is in violation of his constitutional rights. *Id.* at 31-33.   His third claim is that his continued detention following an inadequate post-removal order custody review violates his constitutional rights.   *Id.* at 33-35.   In his fourth claim, he argues that his arrest without a judicial warrant violated his Fourth Amendment rights.   *Id.* at 35-36.   In his fifth claim, he argues that he should be released while the instant habeas petition is pending due to extraordinary circumstances.   *Id.* at 36-41.   Lastly, in his sixth claim he argues that any future transfer to a detention facility outside of the New York City area would violate his constitutional rights.   *Id.* at 42-44.

### 1.  Claims One and Two

The Court analyzes Petitioner's first and second claims together.   Petitioner argues that the length of his detention, particularly in light of the unreasonable foreseeability of his removal, has resulted in a violation of his constitutional rights.   Petitioner claims that he has been detained

for approximately 32 months without a constitutionally adequate bond hearing.[7]   Respondents do not dispute the length of Petitioner's overall detention but state that Petitioner's detention status has changed since November of 2019, consequently altering the timeframe for when he is entitled to a bond hearing.   D.E. 45 at 18-19.   Petitioner insists that the Second Circuit's forbearance policy has effectively stayed his removal.   The Court disagrees because the record reflects that Petitioner's motion to stay his removal in the Second Circuit remains unadjudicated.   *See Granados v. Green*, Civ. Action No. 15-8577, 2015 WL 9216595, *2 (D.N.J. Dec. 16, 2015) (Petitioner's order of removal remained final and he was subject to removal because he had not received a stay of removal pending judicial review).

Post-removal immigration detention is governed by 8 U.S.C. § 1231.   The United States Supreme Court in *Zadvydas v, Davis*, 533 U.S. 678, found that section 1231 does not authorize indefinite post-removal period detention.   *Id.* at 689.   Instead, such detention is limited "to a period reasonably necessary to bring about that alien's removal from the United States."   *Id.*   The Court further noted that six months would be a "presumptively reasonable" period of post-removal detention under section 1231.   *Id.* at 701.   Moreover, after the six-month presumptive period, the alien must provide "good reason that there is no significant likelihood of removal in the reasonably foreseeable future;" [and] the government must then provide "evidence sufficient to rebut [the detainee's] showing."   *Id.*

As noted, the BIA dismissed Petitioner's appeal on November 14, 2019, thus finalizing his order of removal.   Accordingly, Petitioner's detention is within the six-month period, found

---

7 Petitioner also challenges the constitutionality of his December 2017 bond hearing.   D.E. 33 at 28-29.   Since that time, the authority for Petitioner's detention has changed and the Court will not address the constitutionality of his bond hearing pursuant to 8 U.S.C. § 1226(a), at this time.

presumptively reasonable by the *Zadvydas* court.   *See Rodney v. Mukasey*, 340 F. App'x 761 at *764-65 (3d Cir. 2009).   As a result, the Court disagrees with Petitioner that the length of his detention has been unduly prolonged.   Petitioner is able to request the appropriate form of relief once he meets the six-month period of detention by seeking a bond hearing under *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208 (3d Cir. 2018) (providing for a bond hearing for those detained under 8 U.S.C. § 1231(a) for more than six months).   As for Petitioner's argument that his likelihood of removal is unforeseeable, his argument is premature as he has not yet met the six-month period of detention, that would trigger this inquiry under *Zadvydas*. Petitioner's detention is therefore lawful and Petitioner's claims one and two are thus denied.[8]

### 2.  Claim Three

Petitioner next submits that ICE's final-removal order custody review on February 19, 2020, was inadequate and violated his constitutional rights.   D.E. 33 at 33-35.   More specifically, Petitioner argues, *inter alia*, that the proceeding was not adversarial, lacked a neutral arbiter, and denied Petitioner due process by not providing adequate notice of the review proceeding.   "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (internal citations omitted). However, the rules pertaining to post-removal period custody reviews do not require a hearing or an interview prior to the issuance of a decision.   *Lu v. Lowe*, Civ. No. 3-16-2028, 2017 WL 345019, *3 (M.D. Pa., Jan. 24, 2017) (citing 8 C.F.R. §§ 241.4(h)(1), 241.13(e), (f), (g)).   As for Petitioner's claim that counsel was not notified of the custody review and was therefore unable to

---

8 Respondents indicated that they are endeavoring to ensure to Petitioner has a bond hearing once the six-month period of detention is met.   If such a hearing does not occur, nothing in this Opinion prevents Petitioner from seeking relief from this Court.

provide ICE with additional information in support of his release, namely Petitioner's then-recent gubernatorial pardon, the record reflects that the relevant information was nonetheless provided to the agency in advance of the hearing.   Moreover, the record also reflects that Petitioner was served with notice of the custody review on December 27, 2019,   D.E. 45-7 at 1, well in advance of the mandated thirty-day notice period.   *See* 8 C.F.R. § 241.4(h)(2).

Petitioner's appended exhibit reflects that a letter from members of the United States House of Representatives to ICE District Director Decker dated February 10, 2020, informed Mr. Decker of the recent gubernatorial pardon.   D.E. 33-15 at 17.   Mr. Decker was the ICE personnel who ultimately issued the decision to continue detention on February 19, 2020.   D.E. 45-7 at 2. Consequently, the record reflects that up-to-date information about the pardoning of his robbery conviction was provided in advance of the custody review.   This claim is thus denied.

### 3.   Claim Four

Petitioner next submits that his arrest by ICE without a judicial warrant violates his Fourth Amendment rights and therefore limits the government's authority to indefinitely detain him. D.E. 33 at 35-36.   Respondents argue that it is well-settled that arrests made pursuant to administrative authority are upheld, and that Petitioner's instant filing is not the proper vehicle to raise this issue.   D.E. 48 at 23-24.

Federal immigration authorities may arrest aliens based on administrative warrants attesting to probable cause of removability.   *See City of El Cenizo, Tex.*, 890 F.3d 164, 187 (5th Cir. 2018); *see also Abel v. United States*, 362 U.S. 217, 233-34 (1960).   As one district court has explained:

> The INA expressly authorizes ICE to arrest and detain aliens
> pending removal decisions "on a warrant issued by the Attorney
> General." *See* 8 U.S.C. § 1226.   It does not require judicial approval

15

> of the warrant. The Supreme Court noted more than 50 years ago
> that there is "overwhelming historical legislative recognition of the
> propriety of administrative arrest for deportable aliens." *Abel*, 362
> U.S. at 233, 80 S.Ct. 683.

*Tenorio-Serrano v. Driscoll*, 324 F. Supp.3d 1053, 1066 (D. Ariz. 2018).

Petitioner has not cited to any authority that mandates that ICE arrests be made pursuant to judicial warrants.   The record reflects that Petitioner was arrested pursuant to a warrant for arrest of alien (I-200) by "New York City Fugitive Operations."   D.E. 45-4 at 1-2.   Petitioner has not established how his lawful arrest in compliance with relevant administrative rules, violated his Fourth Amendment rights.   This claim is thus denied.

### 4.   Claim Five

Petitioner next submits that a host of extraordinary circumstances warrant his release during the pendency of his section 2241 petition.   D.E. 33 at 36-41.   The Court notes that many of these arguments are mirrored in Petitioner's motion for immediate release.   D.E. 36. Petitioner relies on the Third Circuit's decision in *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986). *Lucas* concerned a state prisoner's petition pursuant to 28 U.S.C. § 2254 rather than a civil immigration detainee matter.   *Id.* at 365-66.   The court in *Lucas* determined that the "extraordinary circumstances" standard controlled in determining whether "bail may be granted to a habeas petitioner prior to a ruling on the merits of the petition."   *Id.* at 367.   As an example of such circumstances, the *Lucas* court pointed to *Johnston v. Marsh*, 227 F.2d 528 (3d Cir. 1955), in which the district judge had ordered a state inmate released to enter a hospital because the inmate was extremely ill.   *Id.* at 366-67.   Yet, the court in *Lucas* court continued, it was not suggesting that a petitioner's poor health would be the only situation that would meet the extraordinary circumstances standard.   *Id.* at 367.

Petitioner first submits that his recent gubernatorial pardon should have been considered by ICE in its most-recent custody review as the pardon essentially eliminated his sole non-youthful offender conviction.   D.E. 33 at 37-38.   Petitioner submits that that he provided ICE with documentary evidence reflecting the pardon as well as other documents he filed in support of his motion to re-open before the BIA.   *Id.*   As Respondents point out, Petitioner's pardon could implicate his eligibility for adjustment of status pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), because he is an inadmissible alien due to his conviction.   D.E. 48 at 34.

While the Court appreciates Petitioner's argument, he has not established why this Court should grant the desired relief.   As Petitioner has submitted, he has filed a motion to re-open before the BIA in light of his recent pardon.   Petitioner appears to be taking the proper steps to present evidence of his pardon to the agency that ultimately will decide what weight, if any, it should give his pardon in light of the final order of removal.   Therefore, this Court does not find that ICE's decision to continue to detain Petitioner, in light of a recent pardon, is an extraordinary circumstance warranting relief by this Court.   Petitioner has, and is pursuing, an appropriate avenue for relief.

Petitioner next submits that his detention has taken a toll on both him and his young family, which consists of his wife and young child.   D.E. 36 at 38.   Petitioner argues that his detention has resulted in instability for his family as a result of his being unable to provide financial and other forms of support, including childcare.   Additionally, Petitioner submits that he fears his wife, who uses mass transit to commute to work during the ongoing pandemic, may contract COVID-19.

To the extent that Petitioner is making a substantive due process right to family claim, he does not cite to any authority providing such right to immigration detainees awaiting removal.

17

Unfortunately, a negative impact on a detainee's family is not an unusual circumstance much less an extraordinary one.   Moreover, Petitioner's concern that his wife may contract COVID-19 is not an extraordinary circumstance that warrants his release.[9]

Petitioner finally argues that the current COVID-19 pandemic warrants his release. Within the last few weeks, district courts and courts of appeals throughout the nation, including this one, have addressed immigration detainees and inmates similar COVID-19 related claims. Most of the courts that have released immigration detainees gave considerable weight to the detainee's underlying health conditions and advanced age.   *Bent v. Barr*, Civ. Action No. 19-06123, 2020 WL 1812850 (N.D. Ca., Apr. 9, 2020); *Thakker*, 2020 WL 1671563; *Basank v. Decker*, Civ. Action No. 20-2518 (AT), --- F. Supp. 3d., 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020).   This Court has done the same if conditions or release can reasonably ensure that the detainee will not flee or present a danger to the community.   The Court is well aware that county jails are not designed with pandemics in mind.

However, several courts have also denied relief to detainees with underlying health conditions and/or who are advanced in age.   *Sacal-Micha v. Longoria*, Civ. Action No. 1:20-37, ---F.Supp.3d---, 2020 WL 1518861 (S.D. Tex., March 27, 2020) (denying relief in the form of release to a sixty-nine year old immigration detainee with serious underlying health conditions); *Camacho Lopez v. Lowe,* Civ. Action No. 3:20-563, 2020 WL 1689874 (M.D. Pa., Apr. 7, 2020) (denying release to symptomatic immigration detainee who received adequate medical treatment);

---

9 Petitioner also appears to be making a First Amendment free exercise clause claim, based on the jail's purported infringement of his right to freely practice Islam during the annual religious fasting period, which occurred last April.   D.E. 33 at 40.   To the extent he is making such a challenge, the proper vehicle is a civil rights action pursuant to 42 U.S.C. § 1983.

*Umarbaev v. Lowe*, Civ. Action No. 1:20-00413, 2020 WL1814157 (M.D. Pa., Apr. 9, 2020) (denying medically quarantined immigration detainee's request for release).

Petitioner argues that he is housed in a facility that had confirmed cases of COVID-19 by inmate/detainees, and that he fears contracting the virus because of the jail conditions.   Moreover, he is concerned that his particular duties as a houseman place him at greater risk of illness because of increased exposure.   Petitioner, who is approximately twenty-six years old, does not submit that he lives with any pre-existing medical conditions or that he is unusually vulnerable to the virus.   Petitioner also does not indicate that his houseman position is involuntary.   As to the houseman position, assuming that it is voluntary as Respondents indicate, then it is unusual (to say the least) for Petitioner to assume duties that he does not have to while at the same time arguing that such duties make him vulnerable.

In addition, neither Petitioner's age nor his medical conditions place him in an unusually vulnerable population vis-à-vis the virus.   This is not to say that relatively young people with no known co-morbidities have not been afflicted by COVID-19.[10]   To the contrary, it merely means that the odds are in Petitioner's favor; clearly neither Plaintiff's age or medical condition necessarily means that if should contract the virus, he will not have a serious adverse reaction. The Court is well aware of the unpredictability of COVID-19.   Nonetheless, the absence of any information that Petitioner lives with a chronic medical condition and Petitioner's ability to continue to perform his work duties as houseman, do not support an inference that Petitioner

---

10 Chris Mooney, Brady Dennis & Sarah Kaplan, *Hundreds of young Americans have now been killed by the coronavirus, data shows*, The Washington Post, https://www.washingtonpost.com/health/2020/04/08/young-people-coronavirus-deaths/,   (last visited April 10, 2020).

qualifies as a part of the vulnerable population that is predisposed to suffering the most severe effects of COVID-19.   Moreover, Bergen County Jail has taken affirmative, concrete, and reasonable efforts to address the pandemic.   Petitioner's claim is thus denied.[11]

### 5.   Claim Six

Lastly, the Court addresses Petitioner's request for Respondents to be enjoined from transferring him to a facility outside of the New York City-area.   D.E. 42-44.   Petitioner submits that his family and his immigration counsel are both in the New York City-area and relocation to ICE facilities in other locales would greatly impede his ability to meet with them.   Petitioner also argues that a transfer would divest this Court of its jurisdiction and render, what he appears to consider, favorable Third Circuit law, inapplicable to him.   *Id.* at 43-44.

The Court cannot properly assess Petitioner's preemptive claim that he may be transferred to a different facility.   However, even if Petitioner was transferred to a different ICE facility in the future, this Court would not lose jurisdiction because Petitioner was detained within this Court's jurisdiction at the time the petition was filed.   *See Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004).   This claim is thus denied.

For these reasons, the Court finds that Petitioner has not shown a substantial likelihood of success on the merits of his Petition for Writ of Habeas Corpus.   Because Petitioner's request for injunctive relief fails to meet the first element, the Court does not reach the remaining three requirements.

---

11 If circumstances or information change, nothing in this Opinion prevents Petitioner from seeking relief in the future.   For example, if it turns out that Petitioner must perform his duties as houseman, meaning that the position is not voluntary, Petitioner may seek relief.   Likewise, if Petitioner learns that he is actually in a vulnerable group, he can also seek relief.

**IV.      Conclusion**

The Court denies without prejudice Petitioner's Petition for writ of habeas corpus pursuant to U.S.C. § 2241, D.E. 33, and his motion for immediate release, D.E. 36.   Because Petitioner's habeas petition and motion for immediate release, are denied, he is not entitled to fees and attorney costs pursuant to EAJA.   An appropriate Order accompanies this Opinion.

Dated: 4/13/2020

_____
JOHN MICHAEL VAZQUEZ
United States District Judge